IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| TRENT WRENN, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-13-924-R |
| | ) | |
| HEALTH SERVICE ADMINISTRATOR PINE, and HECTOR RIOS, Warden, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. Plaintiff's amended complaint and procedural background.

Trent Wrenn (Plaintiff) is a state inmate in Oklahoma Department of Corrections (DOC) custody who has been incarcerated at the Lawton Correctional Facility (LCF), a private prison,[1] at all relevant times. Describing the nature of his case, Plaintiff explains that he had partial dentures when an LCF dentist extracted his remaining teeth, "negating the use of the partials," and that while dentures were prescribed for him in November 2011, they had not been provided as of the filing of his October 2013 amended complaint. Doc. 11, at 2.[2] He contends that he "cannot chew food properly and has to swallow his food like a reptile," "result[ing] in life threatening weight loss and irritable

---

[1] *See* http://www.ok.gov/doc/Facilities.html.

[2] Citations to the record reflect this Court's CMECF designation and pagination.

bowel syndrome." *Id.* He claims to be "painfully enduring intestinal problems and attempting to survive without teeth." *Id.* He accuses "LCF [of] deliberate indifference in denying him proper medical attention," as proven "by failure to provide him with dentures that will allow proper nutrition" and by his "offers to pay for the dentures from his savings or allowing his family to purchase them." *Id.*

Proceeding under 42 U.S.C. § 1983, Plaintiff separates his cause of action into two counts. *Id.* at 3. He labels the first as "[r]efusal of proper health care with deliberate indifference," alleging that he "is in je[o]p[a]rdy of life threatening malnutrition" and that "a physician has prescribed dentures to sustain his health . . . ." *Id.* He claims "the facility" has refused to provide him with dentures, "even [when he] offered to buy his own . . . ." *Id.* In his second count, Plaintiff asserts the "[d]enial of due process in violation of his Fourteenth Amendment rights and violation of the Eighth Amendment of cruel and inhumane punishment." *Id.* As his factual support, he explains that he "has attempted to man[e]uver the administrative remedy process and the facility refuses to respond properly to his grievance." *Id.* He also repeats the claims made in his first count. *Id.*

Plaintiff names two Defendants: (1) "Health Service Administrator, Pine," asserting that he "has refused proper health care to [Plaintiff]" and (2) "Warden,

Hector Rios," who allegedly "refused [Plaintiff] proper medical attention with deliberate indifference." *Id.* at 1-2. He seeks monetary and injunctive relief. *Id.* at 5.

Consistent with United States District Judge David L. Russell's referral of the case for initial proceedings, *see* 28 U.S.C. § 636(b)(1)(B), (C), the undersigned Magistrate Judge ordered LCF officials to prepare a Special Report to develop the record. Doc. 10. *See Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir. l978) (per curiam). LCF officials duly submitted their Special Report, Doc. 20, and Defendants filed a Motion to Dismiss/Motion for Summary Judgment. Doc. 21. Plaintiff filed a response brief, attaching and relying on documents outside the pleadings and asking the court to deny summary judgment because a material fact was in dispute. Doc. 27. He subsequently "request[ed] leave of the Court to amend the § 1983 complaint to add . . . two additional Plaintiffs, located at [LCF], whom have been proceeding down the same path as Plaintiff for the past several years by attempting to obtain dentures at LCF (*i.e.* getting the run around)." Doc. 29, at 2-3. Defendants opposed the motion and Plaintiff replied. Docs. 30, 32.

After carefully reviewing all filings of record, the undersigned recommends the dismissal of Plaintiff's due process claim and the entry of summary judgment in Defendants' favor on his Eighth Amendment claim.

## II. Standard of review.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court views the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted). And, while the court liberally construes a pro se plaintiff's complaint, that plaintiff must adhere to the same rules of procedure that are binding on all litigants. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, strict adherence by a pro se plaintiff to the requirements of Fed. R. Civ. P. 56 is required. With respect to those requirements, the Supreme Court instructs that

> the plain language of Rule 56 . . . mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Additionally, when, as here, Defendants assert an affirmative defense – the failure to exhaust administrative remedies – in a motion for summary

judgment, they "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562,564 (10th Cir. 1997). "If the defendant[s] meet[] this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Id.* "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant[s] [are] then entitled to summary judgment as a matter of law." *Id.*

## III. Analysis.

### A. Exhaustion of administrative remedies and Plaintiff's due process claim.

#### 1. The law.

The Prison Litigation Reform Act of 1995 (PLRA) requires a prisoner to exhaust all available administrative remedies before resorting to a § 1983 action in federal court:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the

5

prison grievance procedure. *Id.* at 218. "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). Courts, however, "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

## 2. Plaintiff exhausted his administrative remedies.

Defendants maintain, and Plaintiff does not argue otherwise, that prior to initiating this lawsuit he was required to exhaust his administrative remedies pursuant to the DOC Offender Grievance Process, OP-090124. Doc. 21, at 5; Doc. 27, at 2-4; Doc. 20, at Ex. 26 (OP-090124). The last step in that procedure – the step implicated in this case – explains the appeal process an offender must follow with the DOC's Administrative Review Authority (ARA) in order to challenge a reviewing authority's response to a grievance. OP-090124, § VII.

Because this case involves medical issues, the reviewing authority is the "facility correctional health services administrator (CHSA) where the incident occurred and to whom the grievance is first submitted." *Id.* §§ I.E., V.A.5., V.B.1. Here, Plaintiff submitted Grievance No. 12-217 to CHSA C. Danley on March 22, 2013. Doc. 20, at Att. 19. He complained that he had been trying to obtain dentures for around fifteen months and was having medical issues

6

despite being on a soft diet. *Id.* The LCF Grievance Coordinator returned Plaintiff's grievance to him as "unanswered," explaining that "[y]ou are receiving what you are requesting." *Id.* at Att. 20.

Plaintiff appealed that result to the ARA. *Id.* at Att. 21. The ARA concluded that he "did submit this grievance in accordance with policy, OP-090124" and advised him that Defendant Pine[3] had been "instructed . . . to prepare an amended formal written response to your grievance, # 12-217, in accordance with policy." *Id.* at Att. 22. The ARA further advised Plaintiff that "[o]nce you receive an amended response to your 'Offender Grievance Report Form,' you may proceed with the grievance process, in accordance with OP-090124." *Id.* On April 30, 2013, consistent with this representation, the ARA requested Defendant Pine to prepare an amended response and "to ensure that [it] is returned to the offender within 15 working days of receipt of this notice." *Id.* at Att. 23.

Defendants acknowledge that "[i]t appears no amended answer was prepared." Doc. 21, at 4. But they attempt to fault Plaintiff, claiming he failed to "file[] a grievance at the local level to request the amended answer . . . ." *Id.* As support for this theory, Defendants point generally to "OP-090124" but not

---

[3] Apparently, Mr. Pine had replaced C. Danley as the LCF CHSA by the time of the ARA's notice. Doc. 20, at Att. 22.

7

to any specific provision requiring Plaintiff to undertake that responsibility under the circumstances of this case. *Id.* Defendants also point to a letter sent to Plaintiff by the ARA in February 2013. *Id.*; Doc. 20, at Att. 29. But they fail to explain the relevance of a letter that predates the ARA's operative April 30, 2013 letter to Defendant Pine, and none is apparent.

The "defect[]in exhaustion" in this case – no final ruling by the ARA on the merits of Plaintiff's grievance[4] – was "procured from the . . . inaction of prison officials" and not by Plaintiff. *Aquilar-Avellaveda*, 478 F.3d at 1225. As such, Defendants' affirmative defense fails.

### 3. Due process claim.

Plaintiff raises a due process claim in his amended complaint, alleging that he attempted to work through the administrative grievance process "and the facility refuses to respond properly to his grievance." Doc. 11, at 3; Doc. 27, at 2. But "there is no independent constitutional right to state administrative grievance procedures." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011). Similarly, "the state's voluntary provision of an administrative grievance process [does not] create a liberty interest in that process." *Id.* So, while Plaintiff's claim – that Defendant Pine's failure to respond to his grievance impeded his ability to continue the grievance process – serves to defeat Defendants'

---

[4] OP-090124, § VII.D.1.

8

affirmative defense of failure to exhaust, it cannot stand as a claim for affirmative relief. Accordingly, the undersigned recommends the dismissal with prejudice of Plaintiff's due process claim.

B. **Plaintiff's Eighth Amendment claim.**

1. **The facts.**

Plaintiff consented to "necessary dental treatment" – the extraction of his remaining teeth – in October 2011 and was placed on a list to receive dentures. Doc. 20, at Att. 2; Doc. 11, at 2, Ex. 1.[5] In February 2012, he started making inquiries to "Dental" about his progress on the list. Doc. 20, at Att. 3.[6] He filed a grievance in March 2012, complaining that he was "getting sick to my stomac[h] from not being able to chew my food" and that "Dental" had failed to assure him as to when he "can get my teeth." *Id.* at Att. 14. The reviewing authority determined that Plaintiff had been without teeth for less than six months and that, in most cases, dentures are not necessary for chewing. *Id.* at Att. 4. But because he had requested food that he did not have to chew, he received an order for a dental mechanical soft texture diet. *Id.* at Att. 4, 5, 15.

---

[5] In addition to evidence of his own, Plaintiff relies on evidence from the Special Report to support his response to Defendants' summary judgment motion. Doc. 27, at 4-6 & Ex. 2.

[6] LCF officials included a second copy of this request to staff in their Special Report. Doc. 20, at Att. 13.

9

Approximately six months later – in early October 2012 – Plaintiff submitted a staff request to "Dentist." Doc. 11, at Ex. 9; Doc. 20, at Att. 6. He stated that he had "been without teeth for a year now" and was both unable to chew food with his gums and "unable to eat the blended food provided." *Id*. He asked to be scheduled for impressions for dentures and stated that "if necessary I will buy the teeth." *Id*. The responding dentist advised that he was being treated in accordance with DOC Dental Services policy, OP-140124, and would be given an appointment when he reached the top of the waiting list. *Id*. Later that same month, Plaintiff asked to be seen at "Medical," explaining that he had no teeth and was having problems chewing and digesting tough food. Doc. 11, at Ex. 4; Doc. 20, at Att. 7. He also advised that he was losing weight. *Id*. In response, a health care professional in "Medical" offered to put him on a soft food diet. *Id*. Then, on October 31, 2012, Plaintiff again requested dental service, repeating that he was unable to break down and digest his food because it was too tough. Doc. 11, at Ex. 3; Doc. 20, Att. 8, at 1. A health care professional in "Dental" again advised him that he was on the denture list and referred him to DOC OP-140124. *Id*.

On November 2, 2012, Plaintiff requested medical service, stating that he needed to see a doctor about stomach pains and digestive issues. Doc. 11, at Ex. 5; Doc. 20, Att. 8, at 2. An RN made a cell-side assessment that same day and

scheduled an appointment with an M.D. to address Plaintiff's nutritional status. *Id.* Plaintiff made a similar request a week later, and an LPN informed him that his appointment to see the doctor had to be rescheduled because no escort had been available. Doc. 11, at Ex. 6; Doc. 20, Att. 9, at 1. Several days later, an RN saw Plaintiff on his complaint of stomach pains and "[a] rough time using bathroom." Doc. 11, at Ex. 7; Doc. 20, Att. 9, at 2. The RN noted that Plaintiff needed an "MD appointment" to evaluate and treat his GI problems. *Id.* On November 28, 2012, by a request to staff directed to "Doctor," Plaintiff asked for dentures or "let me have my family to buy me some." Doc. 11, at Ex. 2; Doc. 20, at Att. 10. That same day, an unidentified staff member – presumably, as Plaintiff maintains, a physician,[7] noted in the disposition section of the form, "no teeth, chronic constipation [and] hard to chew." *Id.* The physician further noted Plaintiff's current weight of 142 pounds as compared to his weight of 161 pounds on November 16, 2010, "[d]own 19 lb which is > 10% body fat." *Id.*

On December 11, 2012, Plaintiff sent a grievance to Mark Stephens, "LCF Hospital Director," stating that when he "allowed my teeth to be pulled," he was told that he would be provided with dentures after his mouth had healed but that "[s]ince then the Ops have been changed to prevent me from getting dentures." Doc. 20, at Att. 16. He explained that he had tried a soft diet but was

---

[7] *See* Doc. 27, at 4.

unable "to keep it on my stomach" and that he was unable to eat without dentures. *Id.* He stated that a doctor had "noticed how much weight I've lost since my teeth were pulled." *Id.*[8] Plaintiff asked the reviewing authority to provide dentures at state expense or to "allow [him] to buy the dentures from [his] state savings." *Id.*

The reviewing authority responded to Plaintiff's grievance in early January 2013, advising that a review of his medical file and prison policy revealed that the DOC dental policy – OP-140124 – "did change in November 2011 [b]ut, since you were on the denture list prior to that time your placement on the list was not affected." *Id.* at Att. 17. The reviewing authority explained that the LCF Dental Department adhered to the priority needs prescribed by policy and that "dentures have a lower priority than those persons who still need care to prevent and/or remove the sources of pain and/or infection." *Id.*

On February 27, 2013, Plaintiff requested dental service, wanting to know "exactly" where he was on the denture list. Doc. 11, at Ex. 8; Doc. 20, at Att. 12. A dentist told him that he was "near the top" of that list. *Id.*

On March 11, 2013, Plaintiff submitted the request to staff that began

---

[8] Presumably, Plaintiff was referring to the November 28, 2012 notation of his weight loss. Doc. 20, at Att. 10. His weight loss from 161 to 142 pounds, however, was *not* measured from the time his teeth were extracted – November *2011* – but from November *2010*, *id.*, over a year before he consented to the "necessary dental treatment." *Id.* at Att. 2.

what the undersigned has concluded was his exhaustion of his administrative remedies. Doc. 20, at Att. 18; *see supra* § III.A. After failing in his effort to obtain administrative relief, Plaintiff filed his complaint in this Court in August 2013. Doc. 1.

### 2. The law.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," including "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The test for constitutional liability of prison officials involves both an objective and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quotations omitted). In that regard, "[t]he prisoner must first produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotations omitted). Second, under the subjective component, the prisoner must establish deliberate indifference to his serious medical needs by "present[ing] evidence of the prison official's culpable state of mind." *Id.* He must show that the prison "official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. "Moreover, a

delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Mata*, 427 F.3d at 751 (quotation omitted). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id.* (quotation omitted).

### 3. Defendants Pine and Rios.

Defendants Pine and Rios, LCF health services administrator and warden, respectively, disclaim any personal involvement in the alleged violation of Plaintiff's Eighth Amendment rights and, in addition, maintain that he cannot satisfy the subjective component of an Eighth Amendment claim. Doc. 21, at 6-10. They request summary judgment. *Id.* at 11.

In response, Plaintiff first concedes that "[t]hese claims would be successful, but for the fact Plaintiff offered to buy his own dentures (S.R. 5, Att. 10, 16, 21)." Doc. 27, at 4. He then tempers his concession, claiming that "Defendants not only denied Plaintiff's grievances, but also had authority to grant permission to purchase the dentures and/or grant permission for outside purchase of the dentures by Plaintiff (See Ex. 2, ODOC OP-140133)." *Id.*

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). And, generally, the "denial of a grievance, by itself without any

14

connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Even assuming that Plaintiff's grievances provided notice to Defendants of Plaintiff's claims, he fails to point to evidence that Defendants did, in fact, have the authority to take either action he suggests.

The undisputed evidence reveals that Plaintiff sought to shorten his wait on the denture list by showing "an identified medical necessity" for dentures under DOC policy. OP-140124, § F.1;[9] *see* Doc. 20, Att. 21, at 2. As is pertinent here, the policy defines a medical necessity as one that "could include but is not limited to" a body mass index (BMI) less than 18.5[10] and "[t]reatment of certain gastrointestinal diseases in which the inability to chew food may adversely affect the patient's condition." *Id.* at § I.F.1.a., c.

Plaintiff contends "[t]he LCF physician and DDS medically prescribed dentures due to Plaintiff's failing health resulting in pain, suffering, weight loss and constipation, due to his inability to chew food or to eat the soft diet." Doc.

---

[9] *See* http://www.ok.gov/doc/documents/op140124.pdf.

[10] National Institutes of Health provides a publically-accessible BMI calculator. *See* http://www.nhlbi.nih.gov/guidelines/obesity/BMI/bmicalc.htm. The undersigned computed Plaintiff's lowest possible BMI as 22.9 by entering his weight at 142 pounds and his height at 5 feet, six inches. *See* Doc. 27, at 5, citing Doc. 20, at Att. 10; Doc. 20, at Att. 1.

15

27, at 4. But, even assuming the truth of this claim, policy requires that "[i]f there is a medical necessity for a complete or partial denture, the dentist will submit a 'Request for Dental Exception' (DOC 140124G, attached) to the chief dental officer for approval before beginning fabrication." OP-140124, § I.F.2. Only the DOC's "chief dental officer," not Defendants Pine or Rios, could grant the request.[11] Contrary to Plaintiff's claim, "HSA Pine and Warden Hector Rios . . . were [not] the decision makers for the purchasing of the dentures [for Plaintiff]." Doc. 27, at 5.

Plaintiff also theorizes that Defendants Pine and Rios "are directly responsible for the granting of admission of medical aids into LCF" and could allow Plaintiff to purchase his own dentures. *Id.* To support this contention, he relies on DOC policy allowing offenders to "purchase nonessential medical or dental adaptive devices and aids in cases where the health of the offender is not adversely affected." Orthoses, Prostheses and Other Aids of Impairment, OP-140133, § I; Doc. 27 & *id.* at 5, Ex. 2. Plaintiff's reliance on policy grounded on the absence of any health-related need for his dentures aside, it is "[t]he [DOC's] chief medical officer," not Defendants Pine and Rios, who approves the purchase

---

[11] The DOC's "chief dental officer" is "[u]nder the supervision of the [DOC's] chief medical officer" who is "responsible for administration of [DOC's] medical services program." Organizational Responsibility of Medical Services, OP-140101, §§ I, I.D. *See* http://www.ok.gov/doc/documents/op140101.pdf.

16

of a "dental adaptive device[]." Doc. 27, at Ex. 2 (OP-140133, § II.A).

## IV. Recommendation and notice of right to object.

For the reasons stated, the undersigned recommends the dismissal with prejudice of Plaintiff's due process claim and the entry of summary judgment in Defendants' favor on Plaintiff's Eighth Amendment claim. The undersigned further recommends that Plaintiff's request for leave to add party plaintiffs, Doc. 29, be denied as moot.

The undersigned advises the parties of their right to object to this report and recommendation by the 2nd day of September, 2014, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned in this case.

IT IS SO ORDERED this 13th day of August, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE